| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in compliance with D.N.J. LBR 9004-2(c) <br><br> **McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP** <br> Eric R. Perkins, Esq. <br> John R. Stoelker, Esq. <br> 40 West Ridgewood Avenue <br> Ridgewood, New Jersey 07450 <br> Telephone: (201) 445-6722 <br> Facsimile: (201) 445-5376 <br><br> *Attorneys for Plaintiff, Dental Kidz, LLC* | |
| In Re: <br><br> DENTAL KIDZ, LLC, <br><br> Debtor. | Bankr. Case No.: 16-11434 (SLM) <br><br> Chapter 11 <br><br> Judge: Stacey L. Meisel |
| DENTAL KIDZ, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ITRIA VENTURES LLC, <br><br> Defendant. | Adv. Pro. No. |

**ADVERSARY COMPLAINT TO DETERMINE THE VALIDITY, EXTENT AND PRIORITY OF LIENS ON DEBTOR'S ACCOUNTS RECEIVABLE**

Plaintiff, Dental Kidz, LLC ("Plaintiff"), by and through its undersigned counsel, hereby brings this complaint against Itria Ventures LLC ("Defendant") and states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to Sections 157 and 1334 of Title 28 of the United States Code.

2. This is a core proceeding within the meaning of Section 157(b) of Title 28 of the United States Code.

3. Venue of this action is proper in this district pursuant to Sections 1408 and 1409 of Title 28 of the United States Code.

4. This Adversary Complaint is brought pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure in order to determine the validity, priority, and extent of liens upon property of the estate as to the Defendant herein.

## PARTIES

5. Plaintiff is a New Jersey limited liability company whose principal office is located at 24 Commerce Street, 11th Floor, Newark, New Jersey. Plaintiff is the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy proceeding.

6. Defendant is a Delaware limited liability company with its principal place of business located at 333 Seventh Avenue, Suite 1802, New York, NY 10001. Defendant is a commercial factoring company, purportedly engaged in the business of purchasing accounts receivable at a discounted rate.

## FACTUAL BACKGROUND

7. In 2014, Plaintiff was experiencing certain cash flow issues resulting from various factors.

8. October 8, 2014, in an effort to secure funding, Plaintiff entered into a Future Receivables Sale Agreement (the "Factoring Agreement") with Defendant.

9. The Factoring Agreement is a standard form prepared by Defendant and regularly utilized by Defendant in its factoring transactions. Plaintiff was not represented by counsel in connection with its execution of the Factoring Agreement.

10. Pursuant to the Factoring Agreement, Defendant purportedly agreed to purchase certain of Plaintiff's accounts receivable at a discount. Specifically, the Factoring Agreement

2

provides that Defendant shall purchase future receivables in the amount of $202,500.00 (the "Amount Sold") for the discounted purchase price of $150,000.00 (the "Purchase Price").

11. As additional security for the Factoring Agreement, a personal guarantee was executed in favor of Defendant by Dr. Lezli Levene Harvell, D.M.D., Plaintiff's sole owner and member.

12. The Factoring Agreement provides that Plaintiff will make weekly payments to Defendant in an amount equal to 11.3% of the receivables collected during each week until Defendant receives the entire Amount Sold.

13. However, as an alternative to the aforementioned repayment procedure, the Factoring Agreement provides that Defendant may directly debit from Plaintiff's bank account the amount of $2,109.38 per week until the entire Amount Sold is paid in full.

14. In fact, since the inception of the Factoring Agreement, Defendant has utilized the "alternative" repayment procedure, deducting $2,109.38 from Plaintiff's bank account on a weekly basis, beginning on or around October 10, 2014 and continuing until October 2015.

15. The Factoring Agreement was carefully drafted to provide that "[b]ecause this is a sale and not a loan, there is no repayment term or interest rate, and [Plaintiff] is not a debtor of [Defendant]. [Plaintiff] expressly acknowledges that the purchase and sale of Future Receivables contemplated by this Agreement does not constitute a loan transaction."

16. Unlike a true sale of future receivables, however, the Factoring Agreement shifts absolutely none of Plaintiff's collection risk to Defendant.

17. As with a standard loan agreement, the Factoring Agreement permits Defendant to simply collect a specific amount each week, which amount is tied in no way to Plaintiff's actual collection of receivables.

18. By its terms, the Factoring Agreement amounts to nothing more than a loan disguised as a purchase of future receivables.

19. Under the terms of the Factoring Agreement, Defendant is entitled to the payment of $2,109.38 per week, which would result in the full payment of the Amount Sold after two (2) years. The repayment terms set forth in the Factoring Agreement result in an annual percentage rate (APR) of interest equal to approximately 35.35%.

20. Despite the representations to the contrary in the Factoring Agreement, the Factoring Agreement was not a sales agreement at all. Rather, it was an unlawful and predatory loan in violation of the usury laws of the State of New York.[1]

21. Since the inception of the Factoring Agreement, Defendant has collected approximately $106,887.00 from Plaintiff.

22. The Factoring Agreement is an unlawful and usurious loan that is disguised as a contract for the sale of current and future accounts receivable.

23. Even assuming, *arguendo*, that the Factoring Agreement was a true sale of current and future accounts receivable, it is nonetheless void *ab initio* and unenforceable pursuant to 42 U.S.C. § 1396(a)(32), which prohibits the assignment by a medical provider of its Medicaid accounts receivable.

24. Approximately 99% of Plaintiff's accounts receivable are Medicaid receivables and, as such, cannot be assigned or transferred to a third party.

25. As set forth in Schedule B of Plaintiff's bankruptcy petition, Plaintiff's tangible assets, which consist of dental cabinetry, dental equipment, computer equipment and networking equipment, have an approximate total value of $268,645.13, subject to further appraisal.

---

[1] Defendant's principal place of business is located in New York, New York, and Defendant communicated with Plaintiff exclusively through representatives located in New York.

# FIRST COUNT

26. Plaintiff repeats and reasserts the allegations contained in paragraphs 1 through 25 as if set forth herein at length.

27. This is an action for equitable and declaratory relief brought pursuant to Bankruptcy Rule 7001(2) and section 363(p)(2) of the Bankruptcy Code to determine the validity, extent, and priority of liens, claims, encumbrances, and interests in Plaintiff's accounts receivable.

28. Section 552(b)(1) of the Bankruptcy Code provides, in relevant part, that "if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to the proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law." 11 U.S.C. § 552(b)(1).

29. On or around October 1, 2008, Plaintiff entered into security agreements with Grow America Fund, Inc. and Brick City Development Corporation (together, the "Secured Creditors"), pursuant to which Plaintiff granted the Secured Creditors a first priority lien on substantially all of its assets, including the proceeds thereof.

30. As of the Petition Date, Plaintiff's indebtedness to the Secured Creditors totaled approximately $583,513.00. Plaintiff does not have sufficient assets to satisfy the first priority lien of the Secured Creditors.

31. Accordingly, Defendant does not have a valid lien against property of the estate, and is merely a general unsecured creditor.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a declaratory judgment determining that Defendant's alleged lien on Plaintiff's accounts receivable is subordinate to that of the Secured Creditors, and that Defendant does not possess a valid lien against such receivables.

## SECOND COUNT

32. Plaintiff repeats and reassert the allegations contained in paragraphs 1 through 31 as if set forth herein at length.

33. Pursuant to the Factoring Agreement, Defendant issued a loan to Plaintiff which charged an unlawful and excessive rate of interest in violation of the usury laws of the State of New York.

34. As a result of the excessive interest rate required by the Factoring Agreement, Defendant collected an unlawful debt and Plaintiff was harmed.

**WHEREFORE**, Plaintiff demands judgment against Defendant Itria Ventures LLC for the following:

(a) An order declaring the Factoring Agreement null and void;

(b) An order determining that Defendant does not have a valid lien on any assets of Plaintiff, including, but not limited to, its accounts receivable;

(c) An order directing that no further payments of principal or interest shall be made under the terms of the Factoring Agreement;

(d) Disgorgement of all payments made to Defendant pursuant to the Factoring Agreement;

(e) Compensatory damages;

(f) Punitive damages;

(g) Costs of suit;

(h) Interest; and

(i) Such other and further relief as the Court deems appropriate.

### THIRD COUNT

35. Plaintiff repeats and reassert the allegations contained in paragraphs 1 through 34 as if set forth herein at length.

36. By withdrawing funds from Plaintiff's bank account in order to repay an illegal or improper loan, Defendant exercised dominion and control over Plaintiff's property and interfered with its possessory right over its own bank account.

37. As a result of its improper conduct, Defendant has engaged in conversion.

**WHEREFORE**, Plaintiff demands judgment against Defendant Itria Ventures LLC for the following:

(a) Compensatory damages;

(b) Punitive damages;

(c) Costs of suit;

(d) Interest; and

(e) Such other and further relief as this Court deems appropriate.

### FOURTH COUNT

38. Plaintiff repeats and reassert the allegations contained in paragraphs 1 through 37 as if set forth herein at length.

39. 42 U.S.C. § 1396a(32) prohibits the assignment by a medical provider to a third party of the provider's right to Medicaid payments.

40. Pursuant to the Factoring Agreement, Defendant purports to have purchased

certain Medicaid receivables from Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Itria Ventures LLC for the following:

(a) An order declaring the Factoring Agreement null and void;

(b) An order determining that Defendant does not have a valid lien on any assets of Plaintiff, including, but not limited to, its accounts receivable;

(c) An order directing that no further payments of principal or interest shall be made under the terms of the Factoring Agreement;

(d) Disgorgement of all payments made to Defendant pursuant to the Factoring Agreement;

(e) Compensatory damages;

(f) Punitive damages;

(g) Costs of suit;

(h) Interest; and

(i) Such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: March 4, 2016        By:    Eric R. Perkins
                                   **McElroy, Deutsch, Mulvaney & Carpenter, LLP**
                                   40 West Ridgewood Avenue
                                   Ridgewood, NJ 07450
                                   Telephone: (201) 455-6722
                                   Facsimile: (201) 445-5376

                                   *Counsel for Plaintiff, Dental Kidz, LLC*